E-FILED
Friday, 23 October, 2026 03:07:21 PM
Clerk, U.S. District Court, ILCD

**IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

PHILLIP ANGLIN,
Plaintiff,

v.

LISA DRAPER *et al.*,
Defendants.

Case No. 1:24-cv-01424-JEH

**Order**

Before the Court is a Motion for Summary Judgment filed by Defendant Dr. Zia Samad, the Medical Director at the Livingston County Jail ("Jail"). Plaintiff Phillip Anglin, an inmate at Western Illinois Correctional Center, responded (Docs. 94, 95), Samad replied (Doc. 104), and Plaintiff filed a surreply (Doc. 106). Samad moved to strike Plaintiff's response as untimely and Plaintiff's surreply as unauthorized.

For the following reasons, Defendant Samad's initial Motion to Strike (Doc. 103) is denied. However, Samad's subsequent Motion to Strike (Doc. 107) and Motion for Summary Judgment (Doc. 85) are granted. Motions not addressed in this order (Docs. 99, 101) are moot.

**I**

In February 2025, Plaintiff filed an Amended Complaint (Doc. 10), alleging constitutional violations at the Jail. After screening, the Court determined that Plaintiff's account alleged the following Fourteenth Amendment claims: excessive force against Corrections Officer Daniel J. Baker and objectively unreasonable medical care against Superintendent Lisa Draper and Defendant Samad. (Merit

Rev., Doc. 9 at 7:2.) The Court later granted Baker and Draper summary judgment. (Docs. 100, 108.)

**II**

**A**

Two weeks after Plaintiff filed his response (Docs. 94, 95) to Defendant Samad's dispositive motion (Doc. 85), Samad filed a Motion to Strike (Doc. 103), explaining that although Plaintiff's response was due on April 8, 2026, he filed it on April 15, 2026.

Defendant Samad's filing does not claim he was prejudiced by Plaintiff's week-long delay in filing his response. Instead, on the same day Samad filed his Motion to Strike, he also filed a reply (Doc. 104), addressing the issues Plaintiff raised in his tardy response. *See Mommaerts v. Hartford Life and Accident Insurance Co.*, 472 F3d 967, 968 (7th Cir. 2007) (affirming District Court's exercise of discretion in denying a motion to strike an untimely filed answer where the delay was short (sixteen days), and the plaintiff did not suffer any prejudice from the late filing). Thus, Plaintiff's Motion to Strike (Doc. 103) is denied.

**B**

After Defendant Samad filed his reply (Doc. 104) in support of his dispositive motion, Plaintiff filed a surreply (Doc. 106), without leave of Court, which Samad moves to strike (Doc. 107).

"[U]nlike some other courts, this Court's Local Rules do not provide for the filing of a surreply in the summary judgment context." *Cummins, Inc. v. TAS Distributing Co., Inc.*, 676 F.Supp.2d 701, 705-06 (C.D. Ill. 2009).

Plaintiff's surreply attempts to address further the issues Defendant Samad's raises in his reply and reiterates why this Court should deny Samad's dispositive motion, which is not necessary. *See Daker v. State Farm Fire & Cas. Co.*, Case No. 1:20-cv-01052, 2021 WL 2877171, at *3 (C.D. Ill. July 8, 2021) (denying a

plaintiff's motion for leave to file a sur-reply where no new issues were raised in the reply). Thus, Samad's Motion (Doc. 107) to Strike Plaintiff's surreply (Doc. 106) is granted. The Clerk of the Court is directed to annotate Doc. 106 as stricken.

**III**

**A**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party must provide documentary evidence showing no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). "If the moving party has properly supported his motion, the burden shifts to the non-moving party to come forward with specific facts showing that there is a genuine issue for trial." *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015).

"When opposing a properly supported motion for summary judgment, the non-moving party must 'cit[e] to particular parts of materials in the record' or 'show[] that the materials cited do not establish the absence … of a genuine dispute.'" *Melton v. Tippeconoe County*, 838 F.3d 814, 818 (7th Cir. 2016) (quoting Fed. R. Civ. P. 56(c)). All facts must be construed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in his favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. A scintilla of evidence supporting the nonmovant's position is insufficient to defeat a motion for

summary judgment; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Id*. at 252.

**B**

Defendant Samad's dispositive motion includes a section listing the undisputed material facts in this case (Doc. 85 at 1-10:1-45.); *see also* Local Rule ("Rule") 7.1(D)(1)(b) (stating a motion for summary judgment must include a section listing the undisputed material facts). As required under Rule 7.1(D)(2)(b), a party opposing a motion for summary judgment must respond to the moving party's undisputed material facts and provide any additional material facts, which must be supported by admissible evidence. In this regard, Rule 7.1(D)(2)(b) also requires the nonmovant's response to identify which are undisputed material facts, disputed material facts, disputed immaterial facts, or undisputed immaterial facts. Civil LR 7.1(D)(2)(b)(1-4). Disputed facts must be supported by evidentiary documentation, with specific page references. (*Id*. at 2-3.)

Plaintiff's response (Doc. 82) neither complies with the classification requirements nor cites evidence supporting his specific objections to Defendant Samad's undisputed facts. Although Plaintiff's failure to comply with the Court's Local Rules is "deemed an admission of the fact," summary judgment is not automatic. LR 7.1(D)(2)(b)(6). Samad still bears the ultimate burden of demonstrating he is entitled to judgment as a matter of law. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). Thus, the following material facts are based on the parties' properly supported briefs and the Court's review of the record.

On September 29, 2022, Plaintiff suffered a compound fracture of his lower right leg as a result of a vehicle accident. (Doc. 85 at 73, 6:21-24, 8:3-6.) The next day, Dr. Eddie Jones, a board-certified orthopedic surgeon, performed surgery on Plaintiff's tibia and fibula and applied an external fixation device. (*Id*. at 74, 9:3-7.) Dr. Jones saw Plaintiff on October 21, 2022, after another vehicle accident caused

misalignment of Plaintiff's external fixation device. (*Id*. at 74, 9:8-24; 75, 10:1-11.) On November 27, 2022, Plaintiff, who was still wearing the external fixation device, was detained at the Jail. (*Id*. at 13:13; 75, 10:14-22.)

On November 29, 2022, the Jail's nursing staff evaluated Plaintiff. (*Id*. at 75, 15:13-19.) That same day, Defendant Samad, who was employed at the Jail as its Medical Director, continued Plaintiff's Augmentin (an antibiotic), Tylenol, and Ibuprofen prescriptions, which were ordered by Plaintiff's orthopedic surgeon, from whom Plaintiff was still receiving medical treatment. Samad explained that he was not present at the Jail daily. Instead, Samad conducted weekly rounds, gave medical orders, and responded to medical inquiries by phone, which is standard practice in county jails. (*Id*. at 12:4, 13:9, 14.)

In the early morning hours of December 18, 2022, Plaintiff complained of pain and swelling in his right lower extremity. A nurse noted that Plaintiff's right leg was warm and the capillary refill was brisk and strong. Later that morning, Plaintiff was brought to the medical unit for worsening pain. A nurse contacted Defendant Samad and reported Plaintiff's foot and ankle were red and slightly warm to the touch. Samad ordered Clindamycin, an antibiotic, to treat a potential infection, and prescribed Tylenol and Tramadol for pain. Plaintiff had a follow-up appointment scheduled for the following day with his treating orthopedic surgeon. Samad advised that Plaintiff should keep that orthopedic appointment. Later that evening, Plaintiff complained of worsening pain. After Samad was informed that the area around the external fixator posts was red and draining, Samad prescribed a narcotic, Ultram, to treat Plaintiff's pain. (*Id*. at 14:15-17.)

On December 19, 2022, Defendant Samad was told Plaintiff's right lower extremity was warm, his right foot was pink, the capillary refill was brisk, pedal pulse was strong, and no edema or drainage was observed. Samad commented that Plaintiff's conditions were reassuring signs that a potential infection had not

progressed. Plaintiff saw Dr. Jones later that day. On December 24, 2022, Samad continued Plaintiff's pain medications, and on January 2, 2023, continued Plaintiff's antibiotic prescription to treat any potential infection. After a nurse reported observing drainage from the external fixator pins on Plaintiff's right heel on January 6, 2023, Samad discontinued Plaintiff's Clindamycin prescription, re-prescribed Augmentin, and ordered a blood count to determine the existence of an active infection. (*Id*. at 14-15:18-22.)

On January 10, 2023, Defendant Samad examined Plaintiff. Samad documented that Dr. Jones had examined Plaintiff and did not recommend an operation to repair Plaintiff's right lower extremity. Plaintiff was referred to a second orthopedic surgeon, who agreed with Dr. Jones' assessment. Samad noted his concern about hardware infection given Plaintiff's recurrent need for antibiotics and lack of healing. Samad believed Plaintiff may need hardware removal, wound cultures to rule out a bone infection, and an evaluation by an infectious disease physician. Samad ordered Plaintiff's referral to an emergency room for an orthopedic and infectious disease evaluation, noting that the testing he had ordered earlier was still pending. Samad further ordered Tylenol to address Plaintiff's pain complaints. (*Id*. at 15:23; 33.) On January 12 or 13, 2023, Dr. Jones removed Plaintiff's external fixation device, and a plaster cast was applied that was later removed and replaced with a splint. (Doc. 10 at 35-36.)

On January 13, 15, and 18, 2023, Defendant Samad ordered additional medications for Plaintiff's pain complaints and an antibacterial cleanser to prevent infection to Plaintiff's right lower extremity. On January 20, 2023, Samad referred Plaintiff to the local emergency room after Plaintiff complained of further pain. On January 25, 2023, Samad ordered Plaintiff transported to the local hospital after he removed portions of his cast in response to pain and swelling. (Doc. 85 at 15:24-27.)

On January 26, 2023, a nurse documented a call received from Plaintiff's orthopedic surgeon, Dr. Jones, canceling Plaintiff's January 27, 2023, appointment and stating his intent to discontinue treating Plaintiff. (*Id*. at 43.) Thereafter, the nursing staff documented its efforts to contact three other orthopedic centers to accept Plaintiff as a new patient, which were declined. (*Id*. at 43-45.)

At about 12:30 a.m. on January 27, 2023, a nurse documented that Plaintiff removed his compression wrap and cast liner, revealing that his right leg was dark pink, cool to the touch, with faint pedal pulses, and that his previous edema was nearly resolved. *Id*. Plaintiff could move his toes but reported that he could not feel them and complained of pain. After Defendant Samad was notified, he ordered Plaintiff's transport to a local emergency room for evaluation and treatment (*Id*. at 16:31; 47.) Plaintiff later returned to the Jail, but that night a nurse observed that Plaintiff had removed his compression wrap, revealing a bluish right foot and that his toes were cool to the touch. Plaintiff was again transported to the emergency room, where he remained until January 28, 2023. (*Id*. at 16:32.)

On January 30, 2023, Defendant Samad examined Plaintiff and noted that Plaintiff's external fixator had recently been replaced with a cast that had been changed twice during emergency room visits. *Id.* Samad also noted that Plaintiff should go to the emergency room for any needed adjustment or replacement of his splint or cast, explaining that primary care physicians typically do not perform these procedures. Samad also noted that the Jail's administration was actively seeking to place Plaintiff with a new orthopedic physician, which Samad commented should occur as soon as possible. (*Id*. at 12:8, 16:34, 51.) Samad also adjusted Plaintiff's medications to address his pain complaints more effectively. Samad documented in Plaintiff's medical notes that Plaintiff stated he was happy with the medication adjustment and did not want to go to a pain clinic. (*Id*. at 51.)

On February 1, 2023, a nurse documented Plaintiff's complaints of pain and swelling in his right leg. Although Plaintiff was able to move his toes and had a pedal pulse, which Defendant Samad opined were reassuring signs, he ordered Plaintiff's transfer to an emergency room for evaluation. (*Id*. at 16:35.) On February 2, 2023, Dr. Samad entered an order for tramadol to manage Plaintiff's pain complaints. (*Id*. at 16:35.) On February 16, 2023, Plaintiff was sent to an emergency room for complaints of pain in his right shin and ankle. Upon Plaintiff's return, Samad approved the administration of Tegretol to Plaintiff, which was prescribed by the emergency room physician. (*Id*. at 16:37.) On February 24, 2023, a nurse observed that Plaintiff's splint appeared bent and his leg looked deformed. Samad sent Plaintiff to the emergency room for re-splinting and realignment. (*Id*. at 16-17: 35, 37-38.)

On March 10, 2023, Plaintiff was transported to the emergency room for stomach pain. The next day, Defendant Samad received a voicemail regarding Plaintiff's emergency room visit and prescribed the muscle relaxer Cyclobenzaprine. On March 12, 2023, Samad ordered Plaintiff transported to a local hospital for complaints of swelling. At that time, Loyola Orthopedics was managing Plaintiff's right lower leg issues. (*Id*. at 17:42-45.) On March 20, 2023, Samad was notified of an "elevation" on Mr. Anglin's right mid-shin. Samad ordered Plaintiff's transfer to an emergency room for evaluation and treatment of his right lower extremity fracture. (*Id*. at 17:42-45; 18:46.)

**C**

"A § 1983 claim that a state pretrial detainee has received inadequate medical care is predicated on the rights secured by the Fourteenth Amendment's Due Process Clause." *James v. Hale*, 959 F.3d 307, 318 (7th Cir. 2020). An objective-reasonableness standard applies to claims of inadequate medical care while in pretrial detention. *Miranda v. County of Lake*, 900 F.3d 335, 352 (7th Cir. 2018).

The plaintiff bears the burden to demonstrate objective unreasonableness, which requires a showing of two elements. *McCann v. Ogle County, Illinois*, 909 F.3d 881, 886 (7th Cir. 2018). The first, which focuses on intent, requires a plaintiff to show that the defendant acted purposefully, knowingly, or recklessly when considering the consequences of his response to the medical condition at issue in the case. *Id*. The second element requires a showing that the challenged conduct was objectively unreasonable, given the totality of facts and circumstances the defendant faced at that time, without considering any subjective beliefs the defendant may have held. *McCann*, 909 F.3d at 886.

The Court notes that Defendant Samad's dispositive motion is premised on the Eighth Amendment deliberate indifference standard, which applies to prisoners. *See Pittman by and through Hamilton v. Madison Cnty., Illinois*, 108 F.4th 561, 566 (7th Cir. 2024) ("For convicted prisoners, the Eighth Amendment's proscription on 'cruel and unusual punishments' protects against deliberate indifference to serious medical needs.").

Under this standard, a "[c]laims of deliberate indifference to medical needs are examined differently depending on whether the defendants in question are medical professionals or [laypersons]." *McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013). Courts presume medical professionals' treatment decisions are valid. *Collignon v. Milwaukee County*, 163 F.3d 982, 989 (7th Cir. 1998). "A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances." *Jackson v. Kotter*, 541 F.3d 688, 698 (7th Cir. 2008). "When a medical professional acts in his professional capacity, he may be held to have displayed deliberate indifference only if the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment."

*McGee*, 721 F.3d at 481 (quoting *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011)). However, the facts presented in this case do not raise a genuine issue of fact that should be resolved by a trier of fact regardless of the standard applied.

Plaintiff's response raises two issues regarding the medical care provided to him by Defendant Samad – the delay in providing two pillows to elevate his right leg and the lack of a referral to a pain management professional.

In support of his first issue, Plaintiff cites what appears to be a portion of a handwritten medical note dated December 12, 2022, with the name "Jones" appearing under the date. (Doc. 94 at 51.) The note directs a "wet to dry dressing change" twice daily, to "elevate lower leg" with "extra pillows to reduce swelling," and notes that a follow-up appointment was scheduled for December 19, 2022. (*Id*.) Plaintiff also cites a December 16, 2022, e-mail authored by Jail Superintendent Lisa Draper, informing the jail staff of the following: "Doctor stated that [Plaintiff] needed pillows to elevate and prevent his screws from digging in. [Plaintiff] has two pillows [and] should be the only one using them." (Doc. 94 at 35.)

Plaintiff asserts a nineteen-day delay in receiving the pillows, which he calculates from the time he entered the Jail on November 27, until he acknowledges receiving the pillows on December 16, 2022. (Doc. 94 at 2:11-12.) In this regard, Plaintiff also cites photos dated October 14, 2022, depicting his right foot with the attached external fixation device lying on a pillow, while he received care at Riverside Medical Center. (Docs. 29-30.)

Despite Plaintiff's reliance, neither the December 12, 2022, medical note; Superintendent Lisa Draper's e-mail dated December 16, 2022; nor the October 14, 2022, photos taken before Plaintiff entered the Jail establish that Defendant Samad made treatment decisions devoid of professional medical judgment or that they were objectively unreasonable. The reasonable inference to be taken by the

evidence Plaintiff cites is that Samad was aware of and concurred with the December 12, 2002, medical note and told Superintendent Draper, who provided Plaintiff the required medical accommodation within four days, which does not establish a constitutional deprivation that requires resolution by a trier of fact.

As to Plaintiff's second issue, the lack of a referral to a pain management professional, Plaintiff's medical records show that on January 30, 2023, Defendant Samad noted that he adjusted Plaintiff's pain medication and further documented that Plaintiff "states he is happy with this adjustment and does not want to go to pain clinic." (Doc. 85 at 51.) In his affidavit, Samad opined that "[i]t was reasonable to adjust [Plaintiff's] pain medication to see if his pain could be better controlled before or instead of referring [Plaintiff] to a pain management clinic, especially given [Plaintiff's] stated preference …." (*Id*. at 16:34.)

Defendant Samad's documented and testimonial evidence, which Plaintiff fails to challenge with admissible relevant evidence showing a genuine dispute on an issue of material fact, fails to show that there exists a genuine issue for trial on this issue. Instead, the undisputed record shows that from December 11, 2022, until Plaintiff transferred to the Illinois Department of Corrections on August 11, 2023, Jail staff transported him over twenty times for hospital visits, emergency evaluations, orthopedic appointments, and surgical procedures, many of which were initiated by Samad in response to reports of Plaintiff's medical condition provided by the Jail's medical staff. (Amend. Compl., Doc. 10 at 6:25; 7:26; 8:33, 35-36, 38-39; 9:41; 11:50, 52; 14:63, 66) (Pl. Dep., Doc. 69-1 at 17:21-24; 19:9-20:15; 21:21-24; 22:1-14; 28:1-6; 63:1-13, 16-17; 63:21-64:13; 64:17-24; 67:2-6; 69:24-70:6; 73:18-21; 74:2-5, 7-10; 76:16-77:4; 77:5-7.)

Accordingly, Defendant Samad's Motion for Summary Judgment (Doc. 85) is granted. Plaintiff's outstanding motions not addressed in this order (Docs. 99,

101) are rendered moot with the Court's entry of summary judgment on Plaintiff's excessive force claims against co-defendant Baker.

**IV**

In light of the foregoing, the Court Orders as follows:

1) Defendant Samad's separate Motions to Strike are denied (Doc. 103) and (Doc. 107).

2) Defendant Samad's Motion for Summary Judgment (Doc. 85) is granted.

3) The outstanding motions not addressed in this order (Docs. 99, 101) are moot.

4) If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* MUST identify the issues the Plaintiff will present on appeal to assist the Court in deciding whether the appeal is taken in good faith. *See* Fed. R. App. P. 24(a)(1)(c); *see also Celske v Edwards*, 164 F.3d 396, 398 (7th Cir. 1999) (an appellant should be allowed to submit a statement of his grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith."); *Walker v O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000) (providing that a good-faith appeal is an appeal that "a reasonable person could suppose…has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $605.00 appellate filing fee regardless of the outcome of the appeal.

*It is so ordered.*

Entered: October 23, 2026

s/Jonathan E. Hawley
U.S. District Judge